
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33743-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KELLI ANNE JACOBSEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Kelli Anne Jacobsen appeals from her conviction for second degree manslaughter of one-year-old R.M., a child for whom she was caring. We affirm the conviction, but reverse some of the legal financial obligations (LFOs).

FACTS

Tawney Johnson, R.M.'s mother, initially hired Ms. Jacobsen to provide daycare for R.M. when she returned to work. Eventually, Ms. Jacobsen became a live-in nanny for the child. The two women communicated regularly during the work day about R.M. via text messaging.

On his first birthday, his mother noticed that R.M. was in a fussy mood. That mood carried over to the next morning and was also observed by Amy Graves, a friend of Ms. Jacobsen who frequently visited at Ms. Johnson's home. Ms. Johnson came home

later that morning to use her personal computer before returning to work shortly before noon.  R.M. appeared to be happy and playful at that time.

Shortly after noon, Ms. Jacobsen called 911, reporting that R.M. was unresponsive.  An ambulance was dispatched at 12:14 p.m.  A neighbor, Danielle Sundwall, arrived at the home first and asked where R.M. was.  Ms. Jacobsen, who appeared motionless with a blank face, handed the child to Sundwall, who observed that R.M. was breathing hard and that his eyes had rolled back into his head.  Paramedic Steve Waite arrived and took the child to the ambulance.  Ms. Jacobsen sat in front with Waite while he drove the vehicle to the hospital.

Waite asked Jacobsen what had happened.  When Jacobsen reported that the child had been pushing a toy and fallen over, Waite was skeptical.  He asked her "what really happened."  Ms. Jacobsen replied that R.M. had stood on the toy, about six inches off the ground, and fallen from it.

Emergency room staff at Kadlec Hospital treated the child.  A CT scan revealed severe bleeding in R.M.'s brain and the presence of a subdural hematoma.  Ms. Jacobsen told an emergency room doctor that R.M. had fallen while climbing on a toy.  The child died while undergoing emergency brain surgery.

A forensic pathologist, Dr. Daniel Selove, testified concerning autopsy results.  The autopsies revealed that R.M. had suffered two fractures of his left arm and one of his left leg.  The leg and one of the arm fractures were between two and four weeks old,

2

while the other arm fracture was two weeks old.  These injuries suggested to Dr. Selove

that the child may have been violently shaken.

The prosecutor filed a charge of first degree manslaughter against Ms. Jacobsen,

who was represented by appointed attorney Scott Johnson.  Anticipating that Ms.

Jacobsen would argue that the death resulted from an accident, the State sought to admit

Dr. Selove's testimony about the prior injuries.  The defense sought to exclude the

evidence under ER 404(b).  The court declined to exclude the evidence.  The case

ultimately went to trial, with the defense putting forth the theory that Ms. Johnson caused

the child's injuries.  The jury deliberated for four days, but a mistrial was eventually

declared because of deadlock.

The case was retried two years later.  In 2014, Shane Silverthorn had replaced Mr.

Johnson as counsel for Ms. Jacobsen.  By the time he stepped down, Mr. Johnson had

invoiced the county in excess of $100,000 for the defense of Ms. Jacobsen.  The case was

retried to a jury before the original trial judge.

In opening statement, Mr. Silverthorn told jurors that R.M. had suffered medical

issues over the year and that "some of the remedial measures that were used to aid in

those difficulties led to fussiness and the like."  Report of Proceedings (RP) at 254.  The

State then sought to introduce the text messages, which had not been used in the first

trial, to dispute this argument.  Defense counsel stated that he wanted to "make a 404(b)

record," although that was never done.  The parties were directed to review the messages

together in order to cull out irrelevant messages from those that were relevant. After a recess, the parties presented a series of exhibits; the defense stipulated to the admission "in their redacted format." RP at 647-648.

The State presented testimony from several of the health care workers who attended to R.M. They uniformly testified that, in their experience, subdural hematomas in infants did not result from a minor fall; more serious impact was required. When Mr. Waite testified that he disbelieved Ms. Jacobsen's statement that the injury occurred from the child falling, defense counsel objected that the response constituted a comment on witness credibility. The court allowed the testimony to stand because it was a comment on the credibility of Ms. Jacobsen's statement rather than a comment about her personal credibility. Dr. Selove testified, without objection, that R.M. had suffered a "nonaccidental injury" resulting from "what another person is doing to" him. RP at 752.

Unlike the first trial, the defense called only two witnesses to testify about their observations of Ms. Jacobsen's emotional response to R.M.'s injury. Ms. Jacobsen did not testify at either trial. In closing argument, the State argued that Ms. Jacobsen's story about a fall was inconsistent with the number of bruises found on the child. The defense argued that Ms. Johnson also had access to R.M. and it was impossible to determine who was responsible for the child's injuries.

The jury returned a verdict of guilty on the included offense of second degree manslaughter and also found the presence of two aggravating factors. The court

sentenced Ms. Jacobsen to an exceptional sentence of 54 months in prison and imposed a total of $121,569.95 in total LFOs. More than $115,000.00 of that figure reflected discretionary costs for court appointed attorneys and experts used in the first trial.

Ms. Jacobsen timely appealed to this court. A panel heard oral argument on the case.

ANALYSIS

This appeal presents three primary issues, although all of them involve multiple theories of error. We address first Ms. Jacobsen's contention that her counsel provided ineffective assistance. We then turn to her contention that the trial judge erred with respect to jury instructions, a purported ER 404(b) ruling, and in improperly imposing the discretionary LFOs. Finally, we consider Ms. Jacobsen's claim of prosecutorial misconduct. Since we do not find multiple trial errors, we do not separately address her contention of cumulative error.

*Ineffective Assistance of Counsel*

Ms. Jacobsen contends that attorney Silverthorn rendered ineffective assistance by failing to raise objections to two pieces of evidence and in failing to seek an instruction. She does not meet her heavy burden of establishing error.

The standards governing ineffective assistance of counsel claims are well understood. An attorney's failure to perform to the standards of the profession will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*,

127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995).  Courts must be highly deferential to counsel's decisions when evaluating ineffectiveness claims.  A strategic or tactical decision is not a basis for finding error.  *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Under *Strickland*, courts evaluate counsel's performance using a two-prong test that requires determination whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures.  *Id.* at 690-692.  When a claim fails one prong, a reviewing court need not consider both *Strickland* prongs.  *Id.* at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

When a claim is not presented to the trial court, an appellate court will only consider it on appeal if the issue is one of manifest constitutional error.  RAP 2.5(a)(3).  Among its other necessary features, an error is only "manifest" if the necessary facts are sufficiently developed in the record to allow the appellate court to adjudicate the claim.  *McFarland*, 127 Wn.2d at 333.  If the factual record is insufficient, an appellant cannot establish that he or she was actually prejudiced.  *Id*.

Several of the claims Ms. Jacobsen makes here overlap with claims of judicial error, resulting in either marginal or no discussion of the claim when dealing with one or the other category.  The first of the ineffective assistance claims is one that overlaps with a claim of judicial error.  Specifically, she argues that her counsel erred in failing to renew a

motion to exclude the text messages[1] under an ER 404(b) theory. This contention fails for several reasons.

First, counsel stipulated to the admission of the text messages after the parties had removed irrelevant messages. On this record, we cannot tell if any of the ER 404(b) concerns that motivated the initial objection still existed after the redactions had been made. Second, the stipulation appears to be a strategic decision of counsel that is beyond review under *Strickland*. The defense used the text messages to support its theory of the case in closing argument. Third, the invited error doctrine would also act as a bar to this argument. *E.g.*, *State v. Studd*, 137 Wn.2d 533, 545-549, 973 P.2d 1049 (1999). For all of these reasons, Ms. Jacobsen cannot show that her counsel erred in his handling of this issue.

Ms. Jacobsen next claims her counsel should have raised a foundation objection to testimony by Gabriel Simms, a registered nurse. Simms testified that a fall from a toy six to twelve inches high could not have caused the fatal head injury suffered by R.M. For two reasons, this claim of ineffective assistance fails. First, there is no showing that counsel erred by failing to object. Mr. Simms did testify to his educational background and experience. This arguably sufficed to set a foundation for the testimony. ER 702. If

---

[1] Ms. Jacobsen's counsel confirmed at oral argument that this claim is focused solely on the admission of the text messages and does not include Dr. Selove's testimony concerning injuries found during the child's autopsy.

there was something lacking in the foundation, a timely objection may have done little more than give the nurse an opportunity to explain in detail his background and his training as it related to this piece of testimony. In short, Ms. Jacobsen cannot show error on this record. Moreover, even if there had been error, the record does reflect she could not show prejudice. Three different medical doctors expressed the same opinions, both before and after Mr. Simms testified. RP at 377, 411-413, 639-642. Dr. Kevin Marsh was quite blunt in testifying that the allegation of a fall "does not match the injury." RP at 641. At worst, Mr. Simms' testimony was cumulative to the unchallenged testimony of the three doctors who all reached the same conclusion.

Ms. Jacobsen's final[2] contention is that her counsel should have proposed an instruction based on WPIC 25.02 concerning proximate cause. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 25.02, at 375 (4th ed. 2016) (WPIC). Since the instruction would not have aided the defense, there was no error.

In part, WPIC 25.02 explains that the defendant's actions must be a proximate cause of death, and further defines the term as meaning "a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which the death would not have happened." *Id*. There may be multiple proximate

---

[2] She also argues that counsel should have challenged the LFO ruling. We do not address that claim since we grant relief on that issue for a different reason.

causes. *Id*. In the context of a criminal case, the term "proximate cause" is equated with "cause in fact." *State v. Dennison*, 115 Wn.2d 609, 624, 801 P.2d 193 (1990).

There was no need for this instruction. The jury was already instructed that manslaughter occurs when a defendant causes the death of another in either a reckless or negligent manner. Clerk's Papers (CP) at 253, 255. The WPIC 25.02 instruction might have been useful if there had been evidence of some other action that might have caused the death (e.g., injuries suffered in a car accident) *in addition* to the defendant's alleged actions, but there was no such evidence in this case. If there were multiple potential causes of death, then the instruction might have been helpful to the defense, although it might not have been.[3]

Here, since Ms. Jacobsen denied doing anything to R.M. and could not point to any other injury that could have caused the death, there was no reason to pursue this instruction.[4] Having shown no basis for the instruction, she cannot establish that her counsel erred by not proposing the instruction.

---

[3] The instruction's warning that there might be multiple proximate causes is one that the prosecution might desire to use when appropriate. Since that aspect of the instruction actually cuts against the defendant, who typically is seeking to argue the other action as cause of death, it is unlikely that the defense will very often want this instruction in a criminal case.

[4] All of the medical experts rejected the fall from a toy theory and there simply was no medical evidence pointing to another possible basis for R.M.'s death. If there had been expert testimony suggesting that as a possible cause, then there would have been a factual basis for seeking the instruction, although the wisdom of such a course might be open to question.

Ms. Jacobsen has not met her burden of showing that her counsel erred, causing her substantial prejudice. The ineffective assistance claim is without merit.

*Judicial Error*

Ms. Jacobsen also alternatively contends, repeating several arguments that we have rejected, that the trial court erred in several of its rulings. With the exception of one point conceded by the prosecutor, we disagree.

Ms. Jacobsen initially contends that jury instructions 9, 12, and 15 constitute comments on the evidence in violation of art. IV, § 16 of the Washington Constitution: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. This provision "prohibits a judge from conveying to the jury his or her personal attitudes toward the merits of the case." *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997). The purpose of this provision "is to prevent the jury from being unduly influenced by the court's opinion regarding the credibility, weight, or sufficiency of the evidence." *State v. Sivins*, 138 Wn. App. 52, 58, 155 P.3d 982 (2007) (citing *State v. Eisner*, 95 Wn.2d 458, 462, 626 P.2d 10 (1981)). "A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). Thus, a jury instruction which removes a factual matter from the jury constitutes a comment on the evidence in violation of this section. *Becker*, 132 Wn.2d at 64-65. In

determining whether a statement by the court amounts to a comment on the evidence, a

reviewing court looks to the facts and circumstances of the case. *State v. Jacobsen*, 78

Wn.2d 491, 495, 477 P.2d 1 (1970).

This challenge focuses on two different types of instructions. Jury Instructions 12

and 15 are the elements instructions for the charges of manslaughter 1 and manslaughter

2. CP at 254, 257. Jury Instruction 9 told the jury that it could only consider evidence of

prior assaults for limited purposes. CP at 251. In each instance, the instruction specified

the activities at which the instruction was directed: "prior assaults" against R.M.

(Instruction 9), and "Inflicted trauma or injury to [R.M.'s] head" (Instructions 12, 15).

CP at 251, 254, 257. Ms. Jacobsen argues that these references, individually and when

read together, constitute a judicial comment on the evidence. We disagree.

It is difficult to conceive of how a limiting instruction might work if it did not

identify the evidence which is to be given limited consideration. The language of

Instruction 9 also did not lend itself to the defendant's construction; it simply says evidence

of "prior assaults against [R.M.]" was to be considered only for several specified purposes.

CP at 251. The instruction did not identify Ms. Jacobsen as the child's assailant.

Similarly, the elements instructions do not support Ms. Jacobsen's argument. For

instance, on the second degree manslaughter charge, the jury was told that the State was

required to prove (in part) that "the defendant engaged in conduct of criminal negligence,

to-wit: Inflicted trauma or injury to [R.M.'s] head." CP at 257. On its face, this language

simply tells what specific actions the State had to prove.  It does not suggest the judge's

view that Ms. Jacobsen had, in fact, inflicted trauma or injury to the child's head.[5]  The

instruction does equate criminal negligence with a head injury, but it does not state that

Ms. Jacobsen had committed criminal negligence or inflicted the head trauma.  Again, the

elements instructions simply recited what the State was required to prove.  Nothing more.

The challenged instructions did not convey the judge's personal opinion about the

evidence in the case.  They did not violate art. IV, § 16 of the Washington Constitution.

The defendant next contends that the trial court erred in allowing the text message

into evidence, allegedly in violation of ER 404(b).  For the reasons stated previously, this

argument fails.  The parties stipulated to the admission of the evidence.  This claim of

error is thus not preserved.  *E.g.*, *State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d

1182 (1985) (evidentiary issue argument on appeal must be based on same objection

presented to the trial court).  Given that the trial court rejected the original motion on the

basis that the litany of the child's illnesses and injuries did not constitute bad acts, but

was merely evidence relevant to show the child's health condition, the reason why Ms.

Jacobsen thought the texts constituted her own bad acts needed to be developed in the

---

[5] The cases in which jury instructions have constituted comments on the evidence involved situations where inept wording resolved a disputed factual question.  *E.g.*, *State v. Jackman*, 156 Wn.2d 736, 132 P.3d 136 (2006) (inclusion of child's birthdate in element commented on evidence because it resolved element that child was a minor); *Becker*, 132 Wn.2d at 63-65 (verdict form that identified an alleged school as an actual school was comment on evidence since it resolved disputed question of fact).

record.  It was not.  Moreover, as noted earlier, any error also was invited due to the stipulation.  For these reasons, this claim is not properly preserved for appeal.

Ms. Jacobsen also claims that the court erred in failing to give a proximate cause instruction based on WPIC 25.02.  This argument fails for a couple of reasons.  Trial courts have an obligation to provide instructions that correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case.  *State v. Dana*, 73 Wn.2d 533, 536-537, 439 P.2d 403 (1968).  Moreover, the failure to request an instruction, or to challenge the trial court's failure to give a requested instruction, waives the issue on appeal.  *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988); RAP 2.5(a).

As noted previously, the instruction was not necessary under these standards because the instructions presented allowed both parties to adequately argue their respective cases.  The issue also was not preserved.  *Scott*, 110 Wn.2d at 686.  Finally, unlike some of their counterparts, Washington judges are not permitted sua sponte to give jury instructions.  *E.g.*, *State v. Wilcoxon*, 185 Wn. App. 534, 542-543, 341 P.3d 1019 (2015) (no obligation to give limiting instruction not requested by party), *aff'd*, 185 Wn.2d 324, 373 P.3d 224 (2016).  The trial court simply did not err in failing to give an instruction that the parties never asked it to give.

Finally, Ms. Jacobsen argues that the trial court erred in imposing discretionary LFOs without an adequate inquiry into her ability to pay.  When questioned at oral argument, the prosecutor indicated he would not contest the issue.  We agree that the

discretionary LFOs are excessive in light of Ms. Jacobsen's earning capacity and were imposed without adequate inquiry. We reverse the discretionary LFOs imposed by the trial court. The mandatory LFOs, totaling $800, and the restitution award, are affirmed.

With the exception of the LFO issue, the challenges to the trial court's decisions are without merit.

*Prosecutorial Misconduct Allegations*

Ms. Jacobsen also contends that the prosecutor engaged in misconduct through trial and closing argument. Although there is one issue of concern, the allegations lack merit.

The standards governing this challenge are well settled. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-719. The allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Prosecutors can properly draw reasonable inferences from the evidence admitted at trial and argue those inferences to the jury. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991); *State v. Hale*, 26 Wn. App. 211, 216, 611 P.2d 1370 (1980). The prosecutor also can respond to the defense presentation and argue that the evidence does

not support the defendant's theory of the case. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). "Mere appeals to jury passion and prejudice, as well as prejudicial allusions to matters outside the evidence, are inappropriate." *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). It also is improper for a prosecutor to tell the jury that its verdict will reflect on society in general or send a message to others. *State v. Powell*, 62 Wn. App. 914, 918, 816 P.2d 86 (1991). However, the defendant must object to the prosecutor's allegedly improper argument in order to preserve a claim of error unless the argument was so "flagrant and ill intentioned that no curative instructions could have obviated the prejudice." *Belgarde*, 110 Wn.2d at 507.

Against this backdrop, we turn to Ms. Jacobsen's allegations of misconduct. In general terms, she alleges that the prosecutor endeared himself to witnesses, had three witnesses "embellish" their testimony from that given in the first trial, placed the prestige of his office "into the evidentiary mix," commented on witness credibility, and argued that justice needed to be done for R.M. *See* Br. of Appellant at 3-4. Several of these claims were waived by defendant's failure to object at trial.

For instance, the claim that some of the witnesses testified more expansively at the second trial than at the first could easily have been tested by cross-examination. The defense also did not object, so if there was any error, it was waived. The defense also did not object to questions or comments that allegedly "endeared" the prosecutor to the jury or put his office's credibility before the jury. These claims were waived as well. Also

15

waived is the claim that the prosecutor vouched for his own credibility in cross-examining defense witness Amy Graves. These unchallenged questions were in response to direct examination that suggested Ms. Graves had been bullied by the prosecutor. Once again, objections could easily have cured any error.

The defense did object to the question of paramedic Steve Waite who asked Ms. Jacobsen "what really happened" in response to her story of R.M. falling with a toy. The trial court permitted the question since it went to the credibility of the explanation instead of Ms. Jacobsen's credibility. Waite's explanation demonstrated his good faith in making the statement and since Ms. Jacobsen did not testify, there could be no danger of commenting on her credibility. This episode did not amount to misconduct.

Ms. Jacobsen next contends that the prosecutor committed misconduct in his examination of Dr. Shawn Jones and Dr. Daniel Selove about pretrial meetings with the two men. In the case of Dr. Jones, the defense had asked Dr. Jones about his pre-trial interviews and he had given an answer favorable to Ms. Jacobsen about how long it would take before a subdural hematoma causes death in an infant. In redirect examination, Dr. Jones had also said his expertise was not in this area, and that "if I could go back and do that again, I would have said . . . I don't think I should answer that." RP at 414. Therefore, when the prosecutor said, "you and I actually discussed that when we met a couple weeks ago. . . . we agreed and decided I would not even ask you that question; is that correct? . . . . Did I keep my word?" RP at 414-415. Ms. Jacobsen did

16

not object to this question and therefore waived any error. Furthermore, the question was within the scope of cross. There was no misconduct.

Dr. Selove was cross-examined by Ms. Jacobsen concerning his meetings with detectives and receipt of police reports while he was attempting to determine how much time had elapsed between R.M.'s injuries and his death. Believing these efforts were aimed at painting Dr. Selove as someone who had based his opinion solely on information provided by the prosecution, the prosecutor on redirect asked questions about a pretrial meeting between Dr. Selove and investigators. He phrased his questions: "was the tone of the question, . . . 'we want more information?' Or was the tone . . . 'we want your opinion to be this because this fits our theory of the case?'" RP at 805-806. Ms. Jacobsen objected but was overruled. Ms. Jacobsen then asked Dr. Selove very similar questions on re-cross that targeted his responses to the information provided to him by police, and included the fact that Dr. Selove was a professional expert and has testified in 20 to 30 trials over the course of his career. RP at 807-809. There was no error. The direct examination invited the State's response, and the opportunity for re-cross also neutralized any concerns about the questioning.

Ms. Jacobsen's remaining challenges involve the prosecutor's closing argument. First, she contends the prosecutor offered a personal opinion about Ms. Graves' credibility:

17

> I want to talk a little bit about Amy Graves. If there was ever a contest for the most changes in a statement and testimony, Amy Graves would be a good candidate to win the national competition. I'm not gonna go through all of the contradictions and changes in Amy Graves' testimony, but . . . [he proceeds to review some contradictions and changes in Ms. Graves' testimony]
>
> . . . .
>
> Four years later, her memory is better—and coincidentally, somewhat favorable to her best friend's defense.

RP at 1363-1364. After suggesting that Ms. Graves forgot that she took an oath to tell

the truth, the prosecutor then concluded:

> But to be honest with you, the testimony from Amy Graves isn't really all that important because you could actually believe everything Amy Graves testifies to and you still are gonna be left with the undisputed medical evidence of the circumstances of [R.M's] death.

RP at 1368.

It is doubtful there is any error at all here since the comments were directly tied to

her testimony. Nonetheless, the defense did not object, so the claim again is waived.

Finally, Ms. Jacobsen challenges the prosecutor's closing remarks:

> [R.M.] needs justice. Our community needs justice. We need a finding of truth. We need a finding of justice.
>       And in this case, that is that the defendant is guilty and that she's guilty of Manslaughter in the First Degree.

RP at 1379.

This statement is problematic despite the fact that the defense did not object.

Telling the jury to find the "truth" is likely error. *State v. Lindsay*, 180 Wn.2d 423, 437,

326 P.3d 125 (2014). Nonetheless, we are convinced that any error was harmless beyond

18

a reasonable doubt. The jury convicted Ms. Jacobsen only of second degree manslaughter and did not heed the prosecutor's argument that justice required a finding of first degree manslaughter. Even if considered an improper appeal to emotion, the effort failed and did not prejudice Ms. Jacobsen.

Ms. Jacobsen has not demonstrated that any prosecutorial misconduct requires a new trial.

The conviction is affirmed. The case is remanded to strike the discretionary LFOs in accordance with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Pennell, J.