IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON, ) No. 82127-0-I
)
Respondent, ) DIVISION ONE
)
v. ) UNPUBLISHED OPINION
)
CODY MOEHRLE, )
Appellant. )
_____ )

ANDRUS, A.C.J. – Cody Moehrle challenges his conviction for first degree unlawful possession of a firearm. He argues the trial court erred in denying his motion for a mistrial following a police officer's violation of a pretrial order. Because the trial court sustained a defense objection to the officer's testimony, struck that evidence, and instructed the jury to disregard it, the court did not abuse its discretion in denying Moehrle's motion for mistrial. We affirm Moehrle's conviction.

Moehrle also requests remand for resentencing in light of State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021). The State concedes that remand for resentencing is appropriate to correct Moehrle's offender score. We accept the State's concession and remand for resentencing.

FACTS

On the morning of May 24, 2020, Alison Mulcahy found Cody Moehrle lying, unresponsive, in the first floor hallway of her apartment building while walking her dog. Moehrle, whom Mulcahy did not recognize, was lying on his side, propped up on his elbow, with his eyes closed, and was surrounded by shopping bags, seemingly full of personal belongings. Mulcahy asked Moehrle if he was okay and if he could hear her. Moehrle moaned but did not otherwise respond. Mulcahy, a clinical psychologist with experience in substance abuse treatment, believed that Moehrle was under the influence of opiates and may have overdosed. She called law enforcement for help, and then noticed Moehrle had a firearm near his waist.

When police officers arrived, Moehrle was still on the floor, lethargic and breathing as if asleep. The officers removed the firearm from a leather holster looped through Moehrle's belt. The firearm, a Smith and Wesson pistol, was fully loaded with a round in the chamber. The police subsequently determined the gun was operable.

After removing the firearm, the officers handcuffed Moehrle and led him from the building. While Moehrle appeared impaired and was initially slow to respond to the officers, once he woke up he was able to respond to the officers' questions. He appeared to understand what the police officers said to him and was able to provide biographical information to them, and the officers had no difficulty understanding his responses. When police escorted him out of the building, Moehrle asked them to bring the shopping bags with them. When law enforcement inventoried the shopping bags, they found a SIG Sauer pistol

magazine inside a black zippered nylon bag. The magazine was fully loaded with the same type of ammunition as the firearm at Moehrle's waist.

Once outside the building, although still groggy, Moehrle conversed freely with the officers. The Seattle Fire Department examined Moehrle, and once medically cleared, Moehrle was arrested for unlawfully possessing a firearm.

The State charged Moehrle with unlawful possession of a firearm in the first degree. At trial, Moehrle stipulated to the fact that he had a prior residential burglary conviction, had received notice that he was ineligible to possess a firearm, and knew he was prohibited from possessing a firearm. Moehrle also did not contest the fact that he possessed a firearm on May 24, 2020. He contended, however, that he was too intoxicated to know he possessed it.

Before trial, the court granted a defense motion in limine to exclude evidence that the firearm was stolen. The State did not object, stating it had no intention of eliciting that information at trial. During the State's direct examination of Officer Neil Collins, when asked why Moehrle was arrested, Officer Collins responded, "For possession of a stolen firearm and possession of --." His response was cut off by a defense objection. The court sustained Moehrle's objection to this evidence, struck it from the record and instructed the jury to "disregard the last part of that answer."

Moehrle moved for a mistrial, arguing that the officer's statement about the stolen firearm violated the court's order in limine, and even though stricken, the statement was so prejudicial that any instruction to disregard it could not cure the prejudice. The State represented that it had advised the testifying officers not to

mention the fact that the gun was stolen. And it argued that because the court had quickly granted the motion and admonished the jurors to disregard it, any prejudice had been alleviated. The court denied the motion, reasoning:

> In this case there was a statement by the officer that Mr. Moehrle was arrested for possession of a stolen firearm, rather than simply unlawful possession of a firearm. The argument is that that is prejudicial to Mr. Moehrle because there's an indication that perhaps the firearm was stolen. That prejudice is mitigated by the fact that he's not on trial for possession of a stole[n] firearm, so the jury may believe that the firearm wasn't stolen in the end.
>
> Beyond that, there was an immediate objection, there was an immediate admonishment to the jury to disregard that statement and not consider it. The jury is presumed to follow that instruction. It happened fast, and given the defense in this case, which is that Mr. Moehrle didn't knowingly possess the firearm at all, how it came to be in his possession really is immaterial and not something that is going to prejudice the jury. For all those reasons, I will deny the motion for mistrial . . . .

Defense counsel subsequently noted that she did not intend to request any additional curative instruction regarding the possession of a stolen firearm comment "only because I just don't think it would unring the bell and I think it would actually just draw attention to the phrase."

The jury convicted Moehrle as charged, and the court sentenced him to an 18-month, prison-based Drug Offender Sentencing Alternative sentence, based on an offender score of 3. His offender score included a 2018 conviction for the unlawful possession of a controlled substance. Moehrle appeals both his conviction and sentence.

ANALYSIS

A.    Mistrial

Moehrle contends the trial court erred in denying his motion for mistrial because Officer Collins's statement that Moehrle was arrested for possessing a stolen firearm denied him a fair trial.

We review a trial court's ruling on a mistrial motion for abuse of discretion. State v. Rodriguez, 146 Wn.2d 260, 269, 45 P.3d 541 (2002).  A trial court should grant a mistrial "only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly."  State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (2015); State v. Christian, __ Wn. App. 2d __, 489 P.3d 657, 666 (2021).  When a mistrial motion is based on improper testimony from a witness, the trial judge is the best situated to assess the statement's prejudice.  State v. Lewis, 130 Wn.2d 700, 707, 927 P2d 235 (1996).  Accordingly, we will overturn a trial court's denial of a mistrial motion only when there is a substantial likelihood that the error prompting the request for a mistrial affected the jury's verdict.  Rodriguez, 146 Wn.2d at 269-70.

Moehrle argues Officer Collins's violation of the trial court's pretrial order constitutes a trial irregularity warranting a new trial.  A trial irregularity may be grounds for a mistrial "when it is so prejudicial that it deprives the defendant of a fair trial."  Christian, 489 P.3d at 666.  "Courts look to three factors to determine whether a trial irregularity warrants a new trial: (1) the seriousness of the irregularity; (2) whether the statement was cumulative of evidence properly admitted; and (3) whether the irregularity could be cured by an instruction."  State

v. Perez-Valdez, 172 Wn.2d 808, 818, 265 P.3d 853 (2011) (internal quotations omitted).

Seriousness of Irregularity

When reviewing the seriousness of an improper witness statement, we must consider "who was responsible for the errant testimony; whether it was the result of a witness who misunderstood or disregarded instructions or whether the witness was misinformed or uninformed as the result of the actions, or inaction, of one of the attorneys." State v. Taylor, __ Wn. App. 2d __, 490 P.3d 263, 271 (2021). While the intentional introduction of inadmissible evidence by a professional witness is a serious irregularity, State v. Gamble, 168 Wn.2d 161, 178, 225 P.3d 973 (2010), there is no evidence that Officer Collins's statement was anything other than inadvertent. The State had no intention of eliciting this information, and informed its witnesses not to mention the fact that the firearm was stolen. Officer Collins made a single reference to arresting Moehrle for possessing a stolen firearm and, after the court issued its curative instruction, there was no further testimony about how Moehrle obtained it. Any violation was therefore fleeting and unintentional. These facts weigh against mistrial.

Cumulative Nature of Inadmissible Evidence

As to the second factor, Officer Collins's statement was not cumulative of other properly admitted evidence. The jury did not hear any other evidence suggesting that the firearm on Moehrle's hip was stolen. As Officer Collins's statement was the sole reference to such in the record, this factor weighs in Moehrle's favor.

<u>Adequacy of Curative Instruction</u>

As to the final factor, the trial court's ruling sustaining the defense objection, striking the testimony, and instructing the jury to disregard it adequately cured any prejudice. Moehrle argues the court's curative instruction was inadequate because it failed to instruct the jury to disregard Officer Collins's reference to the stolen firearm. He bases this argument on the fact that the trial court, after striking the answer, further instructed the jury to disregard "the last part" of Officer Collins's answer. Moehrle maintains that the jury would have assumed the court referred to Officer Collins's second, unfinished comment, not to the first comment about a stolen firearm.

We question whether Moehrle preserved this particular argument for appeal. When he moved for a mistrial, Moehrle did not argue that the court's instruction was inadequate to cover the reference to a stolen firearm. He argued instead that no curative instruction would be adequate to ameliorate the prejudice. Moehrle argued "I know the Court told [the jury] to disregard it, but I don't know that given the nature of that comment, and just how prejudicial it could be, that an instruction to disregard it will cure the prejudice." Defense counsel expressly chose not to ask the court for any additional curative instruction to avoid drawing the jury's attention to the comments. Had Moehrle raised the sufficiency of the instruction given, or requested an additional curative instruction, the trial court could have made it clear to the jury that it struck Officer Collins's answer in its entirety.

Moreover, the State, defense counsel, and the trial court all expressed their understanding that the curative instruction referred to the objectionable statement about the stolen firearm. And when reading the court's curative instruction in context, we conclude a reasonable jury would have reached the same understanding. If during trial, Moehrle understood the court instructed the jury to disregard the entirety of Officer Collins's statement, it is likely that the jury understood the instruction the same way. The trial court immediately struck the answer, in its entirety. It then gave a curative instruction and did so in a way that did not unduly emphasize the testimony. The court instructed the jury that it could not discuss any evidence the court ruled was inadmissible or that it asked the jury to disregard. These instructions ensured the jury would not consider the evidence for an improper purpose because "the jury is presumed to follow instructions from the court." State v. Sanjurjo-Bloom, 16 Wn. App. 2d 120, 128, 479 P.3d 1195 (2021).

Finally, if the jury believed the instruction was inadequate to exclude the testimony about Moehrle being arrested for possessing a stolen firearm, then there was, at most, an erroneous admission of ER 404(b) evidence, a ruling subject to the non-constitutional harmless error standard. See State v. Brown, 113 Wn.2d 520, 554, 782 P.2d 1013 (1989) (non-constitutional harmless error standard applies to ER 404(b) rulings). This requires us to decide whether "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014).

We conclude that any error in admitting testimony that Moehrle was arrested for possessing a stolen firearm was harmless. To convict Moehrle of unlawful possession of a firearm in the first degree, the State had to prove beyond reasonable doubt that (1) he knowingly had a firearm in his control; (2) he had previously been convicted of a serious offense; and (3) the possession occurred in Washington State. The only disputed element in this case was whether Moehrle knew he had a gun in his possession on the day of his arrest.

There was overwhelming evidence that Moehrle knowingly possessed the firearm. A person "knows or acts knowingly" when he is aware of a fact, circumstance or result. Here, the police found the firearm in a holster on Moehrle's hip, looped through his belt. To remove the holster, police officers had to unbuckle and remove Moehrle's belt from his waistband. The location of the gun in a holster attached to Moehrle's belt is strong evidence that he knew it was there. Moreover, the gun was fully loaded with a bullet in the chamber. A fully loaded firearm with a bullet in the chamber suggests preparation or readiness to use the weapon, an act inconsistent with the unknowing possession of that weapon.

Moreover, Moehrle had an extra, fully loaded magazine for the gun in a nearby shopping bag. Moehrle identified the shopping bag as his when he asked the officers to carry it out of the building with him. The fact that Moehrle was carrying extra ammunition for the pistol is compelling evidence that he knew he possessed the firearm.

Although there was evidence that Moehrle was intoxicated, there was also evidence that his impairment did not prevent him from knowing he had a gun on

his hip. He was able to freely converse with police officers. He understood their questions and the officers understood his responses. The officers' body cameras captured their interaction with Moehrle, and the jurors were able to assess for themselves the extent of Moehrle's impairment. Mulcahy, the clinical psychologist who found Moehrle, rejected the suggestion that his intoxication would have prevented him from knowing what he was doing. Mulcahy testified that "[g]enerally, substances might affect your decision-making. You might be more impulsive and things like that, but I don't think you can argue that they're not aware of what they're doing."

The court instructed the jurors that a state of voluntary intoxication "may be considered in determining whether the defendant acted with knowledge." Yet, they found Moehrle guilty, indicating the jurors rejected his contention that his state of intoxication rendered him incapable of knowing he possessed a firearm.

In light of this overwhelming evidence of Moehrle's guilt, any testimony that the gun Moehrle possessed was stolen was harmless error. This factor weighs against a mistrial.

Based on the record before us, we cannot conclude that there is a substantial likelihood that Officer Collins's fleeting and unintentional reference to the stolen gun affected the jury's verdict. Nor can we conclude the curative instruction was ineffective and necessitated a new trial. The trial court did not abuse its discretion in denying Moehrle's motion for a mistrial, and we therefore affirm his conviction.

B.      Resentencing under Blake

Moehrle has requested resentencing in light of State v. Blake. We accept the State's concession that remand for resentencing is appropriate. "A prior conviction based on a constitutionally invalid statute may not be considered when calculating an offender score." State v. Markovich, No. 81423-1-I, slip op. at 15 (Wn. Ct. App. Aug. 2, 2021), http://www.courts.wa.gov/opinions/pdf/814231.pdf. In Blake, the Washington Supreme court held that RCW 69.50.4013(1), the statute criminalizing simple possession, is unconstitutional. 197 Wn.2d at 186. Because RCW 69.50.4013(1) is void, Moehrle's prior conviction for simple possession is unconstitutional on its face, and cannot be included in Moehrle's offender score. Accordingly, we remand for resentencing.

We affirm Moehrle's conviction but remand for resentencing.

Andrus, A.C.J.

WE CONCUR:

Mann, C.J.                          Appelwick, J.