# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 80367-1-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| ZASCHA DMITRI SANJURJO-BLOOM, | |
| Appellant. | |

APPELWICK, J. — Sanjurjo-Bloom appeals his conviction for robbery in the second degree. He argues that the trial court impermissibly allowed opinion testimony from a police officer concerning his identity in security camera footage and impermissibly allowed the officer to testify as to Sanjurjo-Bloom's previous encounters with police. He argues the trial court erred in failing to give a limiting instruction in response to a jury question inquiring about the officer's testimony about prior crimes. We reverse.

## FACTS

On March 11, 2018, Zascha Sanjurjo-Bloom, Jenica Stewart, and a child entered a WinCo grocery store in Marysville, Washington. At some point during their visit, they separated. Stewart moved through the store, picking up items off the shelf and placing them in the cart. Later, she concealed some of these items in her purse. Neither Sanjurjo-Bloom nor the child are visible in the security footage of the area around her when she does this. Before leaving the store, the

group reunited. Stewart paid for some items, but not the items concealed in her purse.

WinCo Loss Prevention Agent Clarence Aseka observed Stewart's behavior on the store's video surveillance system. Aseka and his partner confronted Sanjurjo-Bloom and Stewart in the store's parking lot. Aseka testified the agents identified themselves verbally and by presenting badges. Surveillance footage from the incident did not capture this act. They asked the pair if they had items that they did not pay for. Sanjurjo-Bloom and Stewart denied having items they did not pay for and attempted to walk away. The officers pursued, with Sanjurjo-Bloom and Stewart continuing to deny having taken items. They walked towards their vehicle, a two door pickup truck with a canopy over the truck bed. This is where security cameras begin to capture the interaction in the parking lot between Sanjurjo-Bloom, Stewart, and the security employees.

Stewart then got into the driver's seat with her purse. The child ran around the back of the truck and entered through the passenger side door. Sanjurjo-Bloom remained outside the truck on the driver's side. Aseka, also on the driver's side, reached for Stewart's purse through the driver's side window, believing he could recover the stolen items. When he did so, Sanjurjo-Bloom sprayed pepper spray in his face. Stewart then started the vehicle, backed out of the parking space, Sanjurjo-Bloom jumped into the back of the truck, and the group drove away.

The State charged Sanjurjo-Bloom with robbery in the second degree. At trial, the State introduced the security footage and Aseka testified about the

2

incident. The State also elicited testimony from Marysville Police Officer Chris Farley. He testified that he recognized Sanjurjo-Bloom as the individual in the surveillance video based on previous interactions he had had with Sanjurjo-Bloom and Stewart. He testified that the most recent contact was a month prior to the incident. Prior to trial, Sanjurjo-Bloom had moved in limine to prevent Farley from identifying him in the video. The trial court allowed the identification. In a separate motion, Sanjurjo-Bloom sought to exclude testimony about the "law enforcement nature" of Farley's previous contacts with him. The trial court granted that motion, ruling that Farley could testify to prior contacts, but not the nature of those contacts. Farley's testimony did not discuss the law enforcement nature of his contacts with Sanjurjo-Bloom.

Sanjurjo-Bloom sought a jury instruction instructing that assault in the fourth degree was a lesser included offense of robbery in the second degree. The trial court declined to give the instruction because it found that assault in the fourth degree was not a lesser included offense of robbery in the second degree.

During deliberations, the jury made the following inquiry to the court: "Detective Chris Farley said that they were both involved in a crime a month ago. What was the crime?" In response to the inquiry, Sanjurjo-Bloom sought a limiting instruction telling the jury it could consider Farley's contacts only for the purpose of judging his ability to identify Sanjurjo-Bloom. The trial court declined to give the instruction. Instead, the court responded that the jury must base its decision on the evidence already admitted.

3

The jury found Sanjurjo-Bloom guilty as charged. The court sentenced him to 60 months confinement. It also found that he was indigent. It indicated in its oral rulings that it would impose only the $500 victim assessment and waive all other costs and fees. Nevertheless, the community custody section of the judgment and sentence indicated that Sanjurjo-Bloom was obligated to "pay supervision fees as determined by [the Department of Corrections]."

Sanjurjo-Bloom appeals.

## DISCUSSION

Sanjurjo-Bloom argues that the trial court improperly allowed Farley to identify Sanjurjo-Bloom as the individual in the security footage. He argues that the trial court improperly allowed Farley to testify to his prior interactions with Sanjurjo-Bloom. And, he argues that the trial court erred in declining to give a limiting instruction to the jury regarding Farley's testimony.

We review a trial court's evidentiary decisions for abuse of discretion. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). An abuse of discretion exists if the trial court's exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons. Id.

Sanjurjo-Bloom argues that Farley should not have been permitted to identify him in surveillance footage from the incident. He argues that this opinion testimony invaded the province of the jury. He further argues that Farley's testimony was unfairly prejudicial because he is a police officer. Sanjurjo-Bloom objected to Farley being allowed to identify him at trial in a motion in limine.

4

Only relevant evidence is admissible. ER 402. Evidence is relevant if it makes the existence of a consequential fact more or less probable. ER 401. Even relevant evidence may be excluded if its probative value is substantially outweighed by the risk of unfair prejudice or needless presentation of cumulative evidence. ER 403. Evidence of prior bad acts is inadmissible to prove the character of a person in order to show action in conformity therewith. ER 404(b). Such evidence may be admissible for other purposes, including to prove identity. Id.

Lay witness opinion testimony is governed by ER 701. Such testimony may be allowed if (1) it is rationally based on the perception of the witness, (2) is helpful to a clear understanding of the testimony or a determination of a fact in issue, and (3) is not based on scientific, technical or other specialized knowledge. Id. Opinion testimony regarding the identification of a defendant in a surveillance photo runs the risk of invading the province of the jury. State v. George, 150 Wn. App. 110, 118, 206 P.3d 697 (2009). But, such testimony may be admissible if the witness has had sufficient contacts with the person or when the defendant's appearance in court differs from their appearance in the photograph. Id. ER 701 permits a lay witness to "give an opinion concerning the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." State v. Hardy, 76 Wn. App. 188, 190, 884 P.2d 8 (1994), aff'd sub nom, State v. Clark, 129 Wn.2d 211, 916 P.2d 384 (1996).

The State points to <u>Hardy</u>. There, this court affirmed a trial court's ruling allowing a police officer to identify the defendant, Hardy, in a "somewhat grainy" surveillance video. <u>Id.</u> at 189, 191-192. We observed that the officer was in a better position to identify Hardy because he had known him for several years. <u>Id.</u> at 191. We further observed that his testimony was especially helpful to the jury because the video tape showed Hardy in motion and the officer was more familiar with Hardy's mannerisms than the jury, who had only seen him sitting still in a courtroom. <u>Id.</u>

Sanjurjo-Bloom counters with <u>George</u>, 150 Wn. App. at 118-19. There, this court found it an abuse of discretion for the trial court to allow a police officer to identify the defendants in a "poor quality" video tape. <u>Id.</u> at 115, 118-19. The court based its decision on the fact that the officer had seen the suspects on only one or two brief occasions. <u>Id.</u> at 119. The court found that the contacts "fell far short of the extensive contacts in <u>Hardy</u>." <u>Id.</u>

Here, it cannot be said that Farley's testimony was helpful to the jury. The trial court determined that, unlike the videos in <u>Hardy</u> or <u>George</u>, the video here was not poor quality and showed Sanjurjo-Bloom well. <u>Hardy</u>, 76 Wn. App. at 191; <u>George</u>, 150 Wn. App. at 115. Sanjurjo-Bloom was present in the court room for trial. The jury did not need help making a determination as to whether he was the individual in the surveillance tape. And, the WinCo loss prevention agent from the incident testified at trial and identified Sanjurjo-Bloom as the person he made contact with and as the person identified in the video.

Admission of Farley's identification was therefore unnecessary and cumulative. In order for lay opinion testimony to be "helpful" under ER 701, there must be some finding that the jury had a need for the evidence. No such finding could have been made here.

And, the admission of Farley's lay opinion testimony about Sanjurjo-Bloom's identity led to the testimony of his prior contacts with police. The State conceded this testimony was relevant only to Farley's ability to identify Sanjurjo-Bloom in the surveillance footage. Had the court properly excluded Farley's identification of Sanjurjo-Bloom, it also would have needed to exclude Farley's prior contacts as irrelevant under ER 402.

Further, the admission of testimony about these contacts introduced unfair prejudice because of the risk that the jury would conclude that the prior contacts with police evidenced prior bad acts. The trial court allowed Farley to testify that he had several contacts with Sanjurjo-Bloom but not to the nature of those contacts. The court apparently anticipated that Farley's testimony would not implicate prior bad acts covered by ER 404(b) if the "law enforcement nature" of those contacts was excluded. But, at least some of the jury surmised that Sanjurjo-Bloom's contact with police was the result of criminal activity. The proof of that is the jury's question: "Detective Chris Farley said that they were both involved in a crime a month ago. What was the crime?"

The question made clear that the jury had factually misapprehended Farley's testimony. It also evidenced some likelihood that it was considering Sanjurjo-Bloom's apparent prior criminal acts to determine if he committed the

crime charged here. The purpose of ER 404(b) is to prevent such a miscarriage of justice. But, the jury had not been instructed that utilizing the evidence in this way was impermissible. At this point, the error in admitting the testimony should have been clear. And, the need for a limiting instruction on the use of that evidence strictly to confirm identity should have been obvious. Confronted with an inquiry that showed the jury misunderstood the applicable law, the court was obligated to correct the jury's misunderstanding. State v. Campbell, 163 Wn. App. 394, 402, 260 P.3d 394 (2011), rev'd on other grounds on reconsideration, noted at 172 Wn. App 1009 (2012).

Instead, the court compounded its error by its inadequate response to that inquiry. Sanjurjo-Bloom asked the court to give a limiting instruction. The State was rightfully concerned that the court's response might be perceived as a comment on the evidence. The court's only response to the jury was "you must base your decision on the evidence already admitted."

Limiting instructions on the use of testimony are used with great regularity. Here, an instruction to the jury to limit the use of the officer's testimony to determine only if Sanjurjo-Bloom was the individual pictured in the security footage would not have been a comment on the evidence. See State v. Freeburg, 105 Wn. App. 492, 501-02, 20 P.3d 984 (2001) (limiting instruction can be crafted in such a way so as not comment on the evidence). And, it would have ensured the jury wouldn't consider the evidence for an improper purpose because the jury is presumed to follow instructions from the court. See State v. Davenport, 100 Wn.2d 757, 763-

8

64, 675 P.2d 1213 (1984) (a jury is presumed to follow instructions of the court, absent any contrary showing).

And, we cannot say that the trial court's failure to give a limiting instruction was harmless. Where, as here, error is not of constitutional magnitude, the error is not harmless where there is a reasonable probability that the outcome of the trial would have been materially affected had the error not occured. State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980); State v. Wilcoxon, 185 Wn. App. 534, 542-43, 341 P.3d 1019 (2015) (failure to give a limiting instruction is not a constitutional error), aff'd, 185 Wn.3d 324, 373 P.3d 224 (2016). An error is harmless when the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. State v. Guloy, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

Sanjurjo-Bloom's defense was that he did not know Stewart had stolen items from the store. The surveillance footage does not show him in her vicinity when she places items in her purse. There is no testimony that she told him she was taking items without paying for them. The loss prevention officer testified that he showed his badge to Sanjurjo-Bloom and asked if Stewart had taken items without paying for them. But, security footage did not capture this part of the interaction. The parking lot footage captures only the interactions at the vehicle. The evidence that Sanjurjo-Bloom was an accomplice to Stewart stealing items was not so overwhelming that we can say any error was harmless. Instead, there is a reasonable probability that the jury improperly relied on what it perceived to be

9

Sanjurjo-Bloom's prior criminal acts to determine his knowledge of the stolen items.

The jury's question went to the heart of this issue. It was clear from this question that the jury was utilizing what it perceived as Sanjurjo-Bloom's prior criminal acts to determine if he was committing a similar act here. Had the jury never been exposed to this testimony or if it had been instructed to limit its use of the evidence to the narrow question of identity, there is a reasonable probability that it would have believed Sanjurjo-Bloom and returned a not guilty verdict. Because this issue is dispositive, we need not address Sanjurjo-Bloom's other arguments.

We reverse.

Appelwick, J.

WE CONCUR: